IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling Division

ELECTRONICALLY FILED
Feb 21 2024
U.S. DISTRICT COURT
Northern District of WV

**MICHAEL CUNNINGHAM,**

    **Plaintiff,**

v.      Civil Action No. 5:24-CV-31 (Bailey)

**EQUIFAX INFORMATION SERVICES, LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.; and
MORTGAGE SOLUTIONS OF COLORADO LLC
D/B/A MORTGAGE SOLUTIONS FINANCIAL,**

    **Defendants.**

## COMPLAINT

Plaintiff Michael Cunningham, by counsel, files this Complaint against Defendants Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Mortgage Solutions of Colorado LLC d/b/a Mortgage Solutions Financial ("Mortgage Solutions"). In support of his claims, Mr. Cunningham alleges:

### PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, *et seq*.

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

3.     To accomplish Congress's goals, the FCRA contains several requirements to protect consumers, including §§ 1681e(a), 1681e(b), 1681i, and 1681s-2, which are among the statute's cornerstone provisions.

4.     Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires the CRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. 1681e(b). This section imposes a high, and often disregarded, standard on credit reporting agencies ("CRA"). *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting Webster's Third New International Dictionary 133, 1396, 1771 (1993))).

5.     Finally, to further protect consumers, the FCRA gives consumers the right to dispute the completeness or accuracy of any item of information in their file. *See* 15 U.S.C. 1681i. This is one, if not the most, of the vital and effective protections of the FCRA.

6.     Section 1681i(a)(1)(A) sets forth the CRA's obligation whenever a consumer notifies a CRA that the consumer disputes the completeness or accuracy of information in the consumer's file. When a CRA receives a consumer's dispute, it is obligated to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . ." 15 U.S.C. 1681i(a)(1)(A). This investigation must be a "detailed inquiry or systematic

examination" and cannot be superficial. *Burke*, 2011 WL 1085874, at *4 (quoting *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 (4th Cir. 2004)).

7. Additionally, the FCRA, 15 U.S.C. § 1681–1681x, protects consumers against the furnishing of derogatory and erroneous information by mortgage servicers by imposing further investigative duties on servicers after the consumer disputes the inaccuracy with the credit reporting agencies. 15 U.S.C. 1681s-2(b)(1).

8. In this case, Mr. Cunningham's mortgage servicer, Defendant Mortgage Solutions, furnished inaccurate, derogatory information about his mortgage to Defendants Equifax and Experian, which was ultimately reported on Mr. Cunningham's credit reports.

9. After Mr. Cunningham disputed the inaccurate information with Equifax and Experian, they failed to properly investigate his disputes and continued to report him with inaccurate and derogatory information. Defendant Mortgage Solutions failed to reasonably investigate Defendants Equifax's and Experian's disputes, failed to review all relevant information provided by the consumer reporting agency, and failed to modify information that was found to be inaccurate, incomplete, or could not be verified, when it continued to permit the delinquent and inaccurate information on the account.

10. As a result, Mr. Cunningham alleges claims against Equifax and Experian for failing to reasonably ensure the maximum possible accuracy of his credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and for failing to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. 1681i. Mr. Cunningham further alleges claims again Mortgage Solutions for its failure to properly investigate his disputes and to review all relevant information provided by the credit reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. 168lp.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Mr. Cunningham's claims occurred in this District and Division.

**PARTIES**

13. Mr. Cunningham is a natural person and a consumer as defined by 15 U.S.C. 1681a(c).

14. Defendant Equifax is a foreign limited liability company doing business in West Virginia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. 1681a(d), to third parties. Equifax disburses such consumer reports to third parties under contract for monetary compensation.

15. Defendant Experian is a foreign corporation authorized to do business in West Virginia. Experian is a "consumer reporting agency" as defined by 15 U.S.C. 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. 1681a(d), to third parties. Experian disburses such consumer reports to third parties under contract for monetary compensation.

16. Defendant Mortgage Solutions of Colorado LLC d/b/a Mortgage Solutions Financial (Mortgage Solutions) is a mortgage lender and servicer registered to do business in West Virginia with a principal place of business located at 7450 Campus Drive Suite 200, Colorado Springs, Colorado 80920. Mortgage Solutions furnishes information to Defendants Equifax

Information Services, LLC and Experian Information Solutions, Inc. regarding individual debts allegedly owed to Mortgage Solutions. Mortgage Solutions provided, or "furnished," information as defined by the FCRA to Defendants Equifax and Experian alleging that Plaintiff had an account with its company.

## FACTS

17. In 2007, Mr. Cunningham purchased his family home and at some point thereafter, he refinanced his loan with Defendant Mortgage Solutions.

18. Defendant Mortgage Solutions was his mortgage servicer through the life of the loan; for a period of time, upon information and belief, a company called Dovenmuehle Mortgage, Inc. acted as a sub-servicer for Defendant Mortgage Solutions.

19. In September 2022, Mr. Cunningham settled a lawsuit against Defendant Mortgage Solutions and others asserting that the underlying loan contract was illegal, and that Defendant Mortgage Solutions had engaged in illegal loan servicing activity and improperly foreclosed on Mr. Cunningham's home.

20. As part of the resolution of the claims related to its servicing of the loan, Defendant Mortgage Solutions agreed to delete the reporting tradeline that arose from April 2019 onward.

21. This particular part of the settlement agreement was of particular importance to Mr. Cunningham, because the alleged servicing misconduct by Defendant Mortgage Solutions had resulted in destroying his credit score.

22. Mr. Cunningham needed to be able to obtain a new mortgage loan and knew that he would be unable to do so if his credit was not repaired.

23. Defendant Mortgage Solutions failed to communicate to the credit reporting agencies that the tradeline for Mr. Cunningham's account be deleted.

### *Inaccurate Credit Reporting*

24. In October 2022, Mr. Cunningham reviewed his credit reports with Defendant Experian and noticed his Mortgage Solutions mortgage account was still reporting on his credit report for alleged delinquencies after April 2019; this was inaccurate and derogatory.

25. For example, the mortgage tradeline was not only showing up for dates after April 2019, but also showed that it was 180 days or more past due on several occasions.

26. This information appearing on his credit report was incorrect and misleading. There should have been no reporting of the Mortgage Solutions mortgage account on Mr. Cunningham's credit reports.

27. On or around December 2022, Mr. Cunningham mailed a dispute letter to Experian disputing the incorrect information about this mortgage tradeline, and Mr. Cunningham sent a copy to Mortgage Solutions.

28. Mr. Cunningham's dispute letter explained that the tradeline should be deleted, and he provided a copy of the settlement agreement and other documents detailing the dispute.

29. Upon information and belief, Defendant Experian forwarded Mr. Cunningham's disputes to Mortgage Solutions.

30. In response to this dispute, Mortgage Solutions failed to adequately investigate Mr. Cunningham's disputes, and instead, after a cursory review, verified its inaccurate reporting to Defendant Experian.

31. Mortgage Solutions continued to furnish inaccurate, derogatory information about Plaintiff's mortgage to the credit bureau.

32. Once Experian received Mortgage Solutions's response, Experian did not take any additional action to investigate Mr. Cunningham's disputes and relied only on Mortgage Solutions,

6

even though the documentation he submitted demonstrated that the reporting of his mortgage was inaccurate.

33.     Experian did not maintain reasonable procedures to prevent the reporting of this inaccurate information. For example, it did not delete this tradeline, which would have demonstrated the debt should not be reported.

34.     Experian did not conduct any other investigation into Mr. Cunninham's disputes.

35.     Experian published this information in his credit file, even though there should have been no reporting of the Mortgage Solutions mortgage account on Mr. Cunningham's credit reports.

36.     In March 2023, Mr. Cunningham again reviewed his credit reports with Defendants Experian and Equifax and noticed his Mortgage Solutions's mortgage account was still reporting on his credit report; this was inaccurate, derogatory, and misleading.

37.     For example, the mortgage tradeline was not only showing up, but also showed that it was 180 days or more past due on several occasions.

38.     This information appearing on his credit report was incorrect and misleading. There should have been no reporting of Mortgage Solutions mortgage account on Mr. Cunningham's credit reports.

39.     On or around May 1, 2023, Mr. Cunningham mailed dispute letters to Equifax and Experian disputing the incorrect information about this mortgage tradeline, and Mr. Cunningham sent a copy to Mortgage Solutions.

40.     Mr. Cunningham's dispute letters explained that the tradeline should be deleted, and he provided a settlement agreement and other documents detailing the dispute.

41. Upon information and belief, Defendants Experian and Equifax forwarded Mr. Cunningham's disputes to Mortgage Solutions.

42. In response to this dispute, Mortgage Solutions failed to adequately investigate Mr. Cunningham's disputes, and instead, after a cursory review, verified its inaccurate reporting to Defendants Experian and Equifax.

43. Mortgage Solutions continued to furnish inaccurate, derogatory information about Plaintiff's mortgage to the credit bureaus.

44. Once Experian and Equifax received Mortgage Solutions's response, they did not take any additional action to investigate Mr. Cunningham's disputes and relied only on Mortgage Solutions, even though the documentation he submitted demonstrated that the reporting of his mortgage was inaccurate.

45. Experian and Equifax did not maintain reasonable procedures to prevent the reporting of this inaccurate information. For example, they did not delete this tradeline, which would have demonstrated the debt should not be reported.

46. Experian and Equifax did not conduct any other investigation into Mr. Cunninham's disputes.

47. Equifax responded that it verified the reporting as accurate.

48. Thereafter, Equifax and Experian published this information in his credit file, even though there should have been no reporting of the Mortgage Solutions mortgage account on Mr. Cunningham's credit reports.

49. On July 28, 2023, Mortgage Solutions communicated the deletion of any tradelines reported since April 2019 regarding Mr. Cunningham and his mortgage loan account to TransUnion.

50. On or around after reviewing his August credit file, on October 5, 2023, Mr. Cunningham mailed dispute letters to Defendant Equifax, Defendant Experian, and Trans Union and disputing the incorrect information about this mortgage tradeline, and Mr. Cunningham sent a copy to Mortgage Solutions.

51. Mr. Cunningham's dispute letters explained that the tradeline should be deleted and provided Mortgage Solutions's request to delete the tradeline.

52. Upon information and belief, Defendant Equifax, Defendant Experian, and Trans Union forwarded Mr. Cunningham's disputes to Mortgage Solutions.

53. In response to this dispute, Mortgage Solutions failed to adequately investigate Mr. Cunningham's disputes, and instead, after a cursory review, verified its inaccurate reporting to Defendants Experian and Equifax.

54. Trans Union, as a response to the dispute, deleted the Mortgage Solutions tradeline from Mr. Cunningham's credit report.

55. Once Experian and Equifax received Mortgage Solutions's response, they did not take any additional action to investigate Mr. Cunningham's disputes and relied only on Mortgage Solutions, even though the documentation he submitted demonstrated that the reporting of his mortgage was inaccurate.

56. Experian and Equifax did not maintain reasonable procedures to prevent the reporting of this inaccurate information. For example, they did not delete this tradeline, which would have demonstrated the debt should not be reported.

57. Experian and Equifax did not conduct any other investigation into Mr. Cunninham's disputes.

58.     Thereafter, Equifax and Experian published this information in his credit file, even though there should have been no reporting of the Mortgage Solutions mortgage account on Mr. Cunningham's credit reports.

59.     As a result of the Defendants' conduct, Mr. Cunningham suffered significant concrete, particularized, and actual damages, including a denied use of credit, decreased credit score, negative credit reporting, the inability to obtain credit, embarrassment, humiliation, and other emotional distress.

### *Defendants' Violations Were Willful*

60.     The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).

61.     As a standard practice, Experian and Equifax do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

62. Upon information and belief and consistent with their standard policies and procedures, Experian and Equifax automatically generated their "investigation" results once Mortgage Solutions verified the status of Mr. Cunningham's mortgage, and they did not take any additional actions to verify the accuracy of the information the furnisher provided.

63. Instead, Equifax and Experian blindly accepted Mortgage Solutions's version of the facts and continued to report the inaccurate, derogatory information on Mr. Cunningham's credit reports, despite Plaintiff having furnished Equifax and Experian with copies of documents demonstrating Mortgage Solutions' agreement to delete all tradeline reports on the mortgage line of credit after April 2019.

64. Experian and Equifax continue the practice of parroting the furnisher's response despite numerous lawsuits alleging (and establishing) they fail to conduct a reasonable investigation under the FCRA.

65. Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses and thus hurt their profits.

66. Therefore, at all times relevant to this Complaint, Equifax's, Experian's, and Mortgage Solutions's conduct was willful and carried out with reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious they should have known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports. The Defendants knew, or had reason to know, that its conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law; their FCRA violations were repeated and systematic; and they had substantial documentation available to them that apprised them of their duties under the FCRA but still chose not to comply with the statute.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. 1681e(b)
### (EXPERIAN and EQUIFAX)

67. Mr. Cunningham incorporates each of the preceding allegations.

68. Equifax and Experian violated § 1681e(b) of the FCRA by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Mr. Cunningham.

69. Because of Equifax's and Experian's conduct, Mr. Cunningham suffered significant concrete, particularized, and actual damages, including a denied use of credit, decreased credit score, negative credit reporting, the inability to obtain credit, embarrassment, humiliation, and other emotional distress.

70. Equifax's and Experian's conduct was willful, rendering them liable for statutory and punitive damages under 15 U.S.C. 1681n. In the alternative, the violation was negligent, rendering Equifax and Experian liable under 15 U.S.C. 1681o.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    (a)    Appropriate statutory penalties for each violation of the FCRA;

    (b)    Actual damages;

    (c)    Punitive damages;

    (d)    Reasonable attorney's fees and the costs of this litigation;

    (e)    Pre-judgment and post-judgment interest at the legal rate;

    (f)    Appropriate equitable relief, including the correction of Plaintiff's credit record; and

    (g)    Such other relief as the Court deems equitable, just, and proper.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. 1681i(a)
## (EXPERIAN and EQUIFAX)

71. Mr. Cunningham incorporates each of the preceding allegations.

72. Equifax and Experian violated multiple sections of § 1681i, including: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Mortgage Solutions with all the relevant information regarding Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of § 1681i(a)(4); and (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

73. Because of Equifax's and Experian's conduct, Mr. Cunningham suffered significant concrete, particularized, and actual damages, including a denied use of credit, decreased credit score, negative credit reporting, the inability to obtain credit, embarrassment, humiliation, and other emotional distress.

74. Equifax's and Experian's violations of § 1681i were willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15 U.S.C. 1681n. In the alternative, they were negligent, entitling Plaintiff to recovery under 15 U.S.C. 1681o.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

13

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit record; and

(g) Such other relief as the Court deems equitable, just, and proper.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. 1681s-2(b)(1)(A)
## (MORTGAGE SOLUTIONS)

75. Plaintiff incorporates the preceding paragraphs by reference.

76. On one or more occasion within the past two years, Mortgage Solutions repeatedly violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

77. When a credit reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

78. Upon information and belief, Defendants Equifax and Experian each forwarded Plaintiff's disputes to Mortgage Solutions.

79. Mortgage Solutions understood the nature of Plaintiff's disputes when it received the ACDV forms.

80. Upon information and belief, when Mortgage Solutions received the ACDV form containing Plaintiff's disputes, Mortgage Solutions followed a standard and systematically unlawful process where Mortgage Solutions only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

81. Upon information and belief, Mortgage Solutions failed to conduct a reasonable investigation with respect to the disputed information.

82. As a result of Mortgage Solutions's violations of 15 U.S.C. 1681s-2(b)(1)(A) and its conduct, action and inaction of Mortgage Solutions, Plaintiff suffered concrete, particularized and actual damages including without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

83. Mortgage Solutions's conduct, action, and inactions were and continue to be willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Mortgage Solutions has been negligent, entitling Plaintiff to recover pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit record; and

(g) Such other relief as the Court deems equitable, just, and proper.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. 1681s-2(b)(1)(B)**
**(MORTGAGE SOLUTIONS)**

84. Plaintiff incorporates the preceding paragraphs by reference.

15

85. Upon information and belief, on one or more occasions, Mortgage Solutions violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

86. When Mortgage Solutions received the ACDV forms from the credit reporting agencies, Mortgage Solutions did not review any of the documentation that Plaintiff attached to his disputes, which demonstrated that the mortgage tradeline should be reported to the credit reporting agencies.

87. Had Mortgage Solutions reviewed these documents, which included evidence of Mortgage Solutions's own letter showing that the mortgage account should be deleted, then it would have known that its previous reporting was incorrect and needed to be updated.

88. Furthermore, Mortgage Solutions failed to consider the information provided by the credit reporting agencies.

89. Mortgage Solutions understood Plaintiff's disputes and it claimed the information was inaccurate.

90. Mortgage Solutions received notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by Mortgage Solutions to Experian and Equifax.

91. As a result of Mortgage Solutions's violations of 15 U.S.C. 1681s-2(b)(1)(B) and its conduct, action and inaction of Mortgage Solutions, Plaintiff suffered concrete, particularized and actual damages including without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

92. Mortgage Solutions's conduct, action, and inactions were and continue to be willful, rendering it liable for punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n. In the alternative, Mortgage Solutions has been negligent, entitling Plaintiff to recover pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit record; and

(g) Such other relief as the Court deems equitable, just, and proper.

## COUNT FIVE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
### (MORTGAGE SOLUTIONS)

93. Plaintiff incorporates the preceding paragraphs by reference.

94. On one or more occasions, by example only and without limitation, Mortgage Solutions violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) by publishing representations within Plaintiff's credit file with Experian and Equifax without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

95. Plaintiff's disputes were, at a minimum, *bona fide*.

96. In fact, Plaintiff's disputes were justified because he and Mortgage Solutions agreed to delete the tradeline accounts.

97. As a result of Mortgage Solutions's violations of 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) and its conduct, action and inaction of Mortgage Solutions, Plaintiff suffered concrete, particularized and actual damages including without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

98. Mortgage Solutions's conduct, action, and inactions were and continue to be willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Mortgage Solutions has been negligent, entitling Plaintiff to recover pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit record; and

(g) Such other relief as the Court deems equitable, just, and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**[signature page follows]**

Respectfully submitted,
**MICHAEL CUNNINGHAM,**
**Plaintiff,**

By: *s/Michael Nissim-Sabat*

Michael Nissim-Sabat (WV State Bar No. 12233)
Lydia Milnes (WV State Bar No. 10598)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston WV 25301
Phone: 304.344.3144
Fax: 304.344.3145
Email: michael@msjlaw.org
Email: lydia@msjlaw.org

***Counsel for Plaintiff***